**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**BROADCAST MUSIC, INC.; BEECHWOOD MUSIC CORPORATION; WELSH WITCH MUSIC; GIBB BROTHERS MUSIC; CROMPTON SONGS; SONGS OF UNIVERSAL, INC.; E.O. SMITH MUSIC; SONY/ATV SONGS LLC; HIP CITY MUSIC INC.; and HIFROST PUBLISHING,**

                            **Plaintiffs,**

                    v.                              **1:19-CV-637 (FJS/CFH)**

**DEJOHN'S ON LARK, INC.,** *d/b/a Pearl Street Pub, a/k/a The Upper Room*; **JOHN W. DEJOHN; CHRISTOPHER M. PRATT; and ALESSIO F. DEPOLI,** *each individually*,

                            **Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **GIBBONS P.C.**<br>One Pennsylvania Plaza<br>37th Floor<br>New York, New York 10119<br>Attorneys for Plaintiffs | **MARK S. SIDOTI, ESQ.** |
| **DEJOHN'S ON LARK, INC.**<br>Defendant | **NO APPEARANCE** |
| **JOHN W. DEJOHN**<br>Defendant | **NO APPEARANCE** |
| **CHRISTOPHER M. PRATT**<br>Defendant | **NO APPEARANCE** |

**ALESSIO F. DEPOLI**                                    **NO APPEARANCE**
Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Plaintiffs' motion for a default judgment brought pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 19.

### II. BACKGROUND

Broadcast Music, Inc. ("Plaintiff Broadcast Music") is a corporation with the right to license the public performance rights of 14 million copyrighted compositions.  *See* Dkt. No. 1, Compl., at ¶ 3.  The other Plaintiffs in this action are the owners of the copyrights of the musical compositions that are the subject of this lawsuit.  *See id.* at ¶ 4.  According to Plaintiffs, Defendant DeJohn's on Lark, Inc. is a corporation that maintains an establishment known as the Pearl Street Pub, also known as The Upper Room, (hereinafter "the Establishment") located at 59-61 Pearl Street, Albany, New York 12207.  *See id.* at ¶ 14.  The remaining Defendants are officers or principals of the Establishment, who are responsible for its operation and management.  *See id.* at ¶¶ 17-22.

Plaintiffs allege that Defendants permit musical compositions to be publicly performed at the Establishment and that Defendants publicly performed musical compositions from Plaintiff Broadcast Music's repertoire without authorization.  *See id.* at ¶¶ 15, 25.  Specifically, Plaintiffs allege that Defendants engaged in seven (7) acts of willful copyright infringement, in violation of 17 U.S.C. § 101 *et seq.* ("the Copyright Act"), based on the following unauthorized performances: (1) *Fat Bottomed Girls*, written by Brian May, copyrighted to Plaintiff

Beechwood Music Corporation; (2) *Landslide*, written by Stevie Nicks, copyrighted to Stephanie Nicks, an individual doing business as Plaintiff Welsh Witch Music; (3) *Stayin' Alive,* also known as *Staying Alive*, written by Barry Gibb, Robin Gibb, and Maurice Gibb, copyrighted to the Estate of Maurice Ernest Gibb and the Estate of Robin Gibb doing business as Plaintiff Gibb Brothers Music and Barry Alan Gibb, an individual doing business as Plaintiff Crompton Songs; (4) *Mona Lisa*, written by Ricky Walters, previously known as Slick Rick, copyrighted to Plaintiff Songs of Universal, Inc.; (5) *Beverly Hills*, written by Rivers Cuomo, copyrighted by Rivers Cuomo, an individual doing business as Plaintiff E.O. Smith Music; (6) *Wonderwall*, written by Noel Gallagher, copyrighted by Plaintiff Sony/ATV Songs LLC; and (7) *Poison*, written by Elliot T. Straite*,* copyrighted by Plaintiff Hip City Music Inc. and Hiriam Hicks and Elliot Straite, a partnership doing business as Plaintiff Hifrost Publishing.  *See* Dkt. No. 1-1, Ex. A, Schedule, at 2-4.

Plaintiffs allege that, since March 2017, Plaintiff Broadcast Music has reached out to Defendants more than 160 times by phone, mail, and email "in an effort to educate Defendants as to their obligations under the Copyright Act with respect to the necessity of purchasing a license for the public performance of musical compositions" in Plaintiff Broadcast Music's repertoire.  *See* Dkt. No. 1 at ¶ 24; *see also* Dkt. No. 19-3, Mullaney Decl., at ¶¶ 4-5, 7. Included in the letters were Cease and Desist Notices, providing Defendants with formal notice that they must immediately cease all use of Plaintiff Broadcast Music's licensed music in the Establishment.  *See* Dkt. No. 1 at ¶ 24; *see also* Dkt. No. 19-3 at ¶ 5.  Plaintiff Broadcast Music's records indicate that, of the ninety (90) times it telephoned the Establishment, it spoke to persons associated with its operation "on a number of those occasions."  *See* Dkt. No. 19-3 at ¶ 7.  Despite Plaintiff Broadcast Music's efforts, Defendants failed to enter into a license

agreement with it and continued to offer unauthorized public performances of Plaintiffs' music. *See id.* at ¶ 8. The annual license fee costs approximately $9,860.00; and the estimated license fees between April 2017 and September 2019 amounted to approximately $28,985.00. *See id.* at ¶ 19.

On two occasions in November and December 2018, Alex Rodberg, an employee of Plaintiff Broadcast Music, went to the Establishment and made audio recordings and written reports of the music that was publicly performed there. *See id.* at ¶¶ 9-12; *see also* Dkt. No. 19-4, Mullaney Ex. A; Dkt. No. 19-5, Mullaney Ex. B. Plaintiff Broadcast Music confirmed its license to those songs by way of a digital review using patented digital audio technology. *See* Dkt. No. 19-3 at ¶¶ 9-13. The seven claims of copyright infringement, listed above, stem from those investigations.

Plaintiffs filed their complaint in the instant action on May 29, 2019. *See generally* Dkt. No. 1. Defendants were properly served but never appeared in the action. *See* Dkt. No. 18. The Clerk of the Court issued a Clerk's Certificate of Action Taken on Plaintiff(s) Request for Entry of Default against all Defendants on August 20, 2019. *See id.* Plaintiffs then filed the pending motion for a default judgment against all Defendants on September 6, 2019. *See* Dkt. No. 19. Plaintiffs request statutory damages in the amount of $87,500.00, representing an award of $12,500 for each of the seven acts of infringement, an injunction, costs, attorneys' fees, and interest. *See* Dkt. No. 19-1, Pls' Memorandum in Support, at 18.

### III. DISCUSSION

**A. Plaintiffs' entitlement to entry of a default judgment**

Federal Rule of Civil Procedure 55(b) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely response to a pleading. *See* Fed.

R. Civ. P. 55(b).  "'In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim.'"  *Priestley v. Headminder, Inc.,* 647 F.3d 497, 505 (2d Cir. 2011) (quoting *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09 CV 4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5-6 (E.D.N.Y. Mar. 11, 2011)).

To prevail in an action for copyright infringement based on an unauthorized public performance of a musical composition, a plaintiff must prove the following:

> (1) the originality and authorship of the compositions involved; (2) compliance with all formalities required to secure a copyright under Title 17 of the United States Code; (3) that plaintiffs are the proprietors of the copyrights of the compositions involved in this action; (4) that the musical composition[s] were publicly performed for profit (by the defendants); and (5) that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

*Broad. Music, Inc. v. Wexford INR LLC*, No. 1:12-CV-1253 (GTS/RFT), 2014 U.S. Dist. LEXIS 128510, *13-*14 (N.D.N.Y. Sept. 15, 2014) (quoting *Broad. Music, Inc. v. DFK Entm't, LLC*, 10-CV-1393, 2012 U.S. Dist. LEXIS 35089, *5-*6 (N.D.N.Y. Mar. 15, 2012) (Sharpe, J.) (citing *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 912 [D. Conn. 1980])).

Plaintiffs assert that the first three elements of infringement are established through Mr. Meares's Declaration and the allegations in the Schedule annexed as Exhibit A to the complaint. *See* Dkt. No. 19-1 at 9-10 (citing Dkt. No. 19-2, Meares Decl., at ¶¶ 2, 4, 5; Dkt. No. 1 at ¶¶ 3-13, 26-29; Dkt. No. 1-1, Ex. A, at 2-4).  The Schedule identifies the names of the authors and publishers of each musical composition at issue, the dates of copyright registration, and the registration numbers.  *See* Dkt. No. 1-1, Ex. A, at 2-4.  According to Plaintiffs, "[t]his information constitutes 'prima facie evidence of the validity of the copyright and of the facts stated in the certificate,' 17 U.S.C. § 410(c), and '[satisfies] the first three elements of a claim

for copyright infringement[.]'" *See* Dkt. No. 19-1 at 10 (quoting *Broad. Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp. 3d 184, 192 (S.D.N.Y. Jan. 21, 2016)) (other citations omitted).

Plaintiffs contend that the fourth element—public performance of copyrighted musical compositions—is established through Mr. Rodberg's Certified Infringement Reports from when he visited the Establishment and made audio recordings and written reports of the musical compositions performed, as well as by the Certifications from reviewing the audio recordings. *See id.* (citing Dkt. No. 19-3, Mullaney Decl., at ¶¶ 3, 9-13; Dkt. No. 19-4, Ex. A; Dkt. No. 19-5, Ex. B; Dkt. No. 1 at ¶¶ 14-22, 30). Plaintiffs argue that courts have recognized that the public performance of music may be established by such certifications and declarations. *See id.* (citing *Prana Hospitality*, 158 F. Supp. 3d at 192; *Wexford INR LLC*, 2014 U.S. Dist. LEXIS 128510, at *28). Lastly, Plaintiffs assert that the fifth element—lack of authorization—was also established by Mr. Mullaney's Declaration, in which he verifies that Defendants did not have a license agreement with Plaintiff Broadcast Music on the dates of the infringement, nor had any Plaintiffs authorized the performances. *See id.* at 10-11 (citing Dkt. No. 19-3 at ¶¶ 3, 8, 18-19; Dkt. No. 1 at ¶¶ 25, 30).

In addition, Plaintiffs note that all of these elements are admitted as a result of Defendants' default. *See id.* Plaintiffs thus argue that they have adequately alleged facts that, taken as true as a result of Defendants' default, establish Defendants' liability for copyright infringement. *See id.* at 11. Accordingly, Plaintiffs assert that a default judgment is warranted. *See id.* For all of the reasons Plaintiffs' stated in their Memorandum in Support, the Court finds that Plaintiffs have sufficiently alleged that they are entitled to a default judgment as a result of Defendants' copyright infringement.

### B. Statutory damages

A plaintiff in an action for copyright infringement shall be entitled to "an award of statutory damages for all infringements involved in the action, with respect to any one work … in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). "If a court finds that a defendant committed the infringement 'willfully,' it may increase the statutory damages award up to an amount of [one] hundred and fifty thousand dollars ($150,000.00) per work." *Broad. Music, Inc.*, 2014 U.S. Dist. LEXIS 128510, at *25 (citing 17 U.S.C. § 504(c)(2)) (other citation omitted). "'To prove "willfulness" under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights.'"[1] *Id.* (quoting *Elec. Creations Corp.* [*v. Gigahertz, Inc.*, No. 5:12-CV-1423 (GTS/DEP)], 2013 U.S. Dist. LEXIS 88805, [*18 (N.D.N.Y. June 25, 2013)]).

"In determining a proper statutory award, courts generally consider 'the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiff as a result of the defendants' conduct, and the infringers' state of mind.'" *Broad. Music, Inc. v. N. Lights, Inc.*, 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) (quotation omitted). "Additionally, 'to put infringers "on notice that it costs less to obey the copyright laws than to violate them," … a statutory damage award should significantly exceed the amount of unpaid

---

[1] Plaintiffs have not asked for a willfulness enhancement because they are only requesting $12,500 per infringed work. However, Plaintiffs correctly note that the Court may consider "willfulness" while determining statutory damages even without considering the enhancement. *See Broad. Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp. 3d 184, 197 (S.D.N.Y. Jan. 21, 2016) (stating that, "[w]here, as here, the plaintiff does not seek a willfulness enhancement, it is still appropriate for the Court to consider evidence of willfulness in 'determining where in the range between $750.00 and $30,000.00 damages should be set.' *Microsoft Corp.* [*v. AGA Solutions, Inc.*, No. 05-CV-5796] 2010 U.S. Dist. LEXIS 26756 [*4 (E.D.N.Y. Mar. 22, 2010)]").

license fees.'"  *Id.* (citing [*Broadcast Music v.*] *R Bar of Manhattan*, 919 F. Supp. [656,] 660 [(S.D.N.Y. 1996)] (quoting *Rodgers v. Eighty Four Lumber Co.*, 623 F. Supp. 889, 892 (W. D. Pa. 1985))).  "As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent." *Id.* (citations omitted); *see also Broad. Music, Inc. v. Prana Hospitality, Inc.*, 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) (noting that "courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid") (footnote omitted).

In recent years, courts in this District have found that a statutory award of $4,000 per infringement, amounting to less than twice the unpaid licensing fees, was appropriate for establishments, such as the one in this case, that violated the Copyright Act.  *See generally Wexford INR LLC*, 2014 U.S. Dist. LEXIS 128510; *N. Lights, Inc.*, 555 F. Supp. 2d 328; *DFK Ent'mt, LLC,* 2012 U.S. Dist. LEXIS 35089; *see also Broad. Music, Inc. v. Living Room Steak House, Inc.*, No. 14-CV-6298, 2016 U.S. Dist. LEXIS 23676, *19 (E.D.N.Y. Feb. 26, 2016) (finding $4,000 per infringement for four infringements, which was four times the unpaid licensing fees, an appropriate amount of statutory damages); *cf. Broad. Music, Inc. v. Metro Lounge & Café LLC*, No. 5:10-CV-1149 (NAM/ABT), 2013 U.S. Dist. LEXIS 9934 (N.D.N.Y. Jan. 24, 2013) (finding $8,000 for three infringements, amounting to three times the unpaid licensing fees, a reasonable amount of statutory damages).  Like Defendants in this case, the defendant-establishments in the recent cases from this District had infringed others' copyrights without a license for a time period between two and three years.  However, Plaintiff Broadcast Music made vastly fewer attempts to contact the defendant-establishments in those cases than it made to contact Defendants here.  Most notably, this case is also distinguishable because an

award of $4,000 per infringement would total only $28,000, which would not amount to, let alone "more than double," Defendants' $28,985.00 in unpaid licensing fees.

Plaintiffs request $12,500 per infringement, which was the amount that a court in the Southern District of New York granted them for three infringements where the defendant-establishment failed to obtain a license for two years and one month. *See Prana Hospitality*, 158 F. Supp. 3d at 189. In that case, Plaintiff Broadcast Music sent 48 letters and emails, made 42 calls, and made four in-person visits to the defendant-establishment. *See id.* at 189-90. The total statutory damages, amounting to $37,500, constituted five times the unpaid licensing fees. *See id.* at 199.

Here, a statutory damages award of $12,500 per infringement would amount to three times the unpaid licensing fees. Although it is a higher percentage of the unpaid licensing fees than typically awarded in this District, it is consistent with non-innocent findings in this Circuit and upholds the purpose of statutory damages for violations of the Copyright Act. *See id.*; *see also N. Lights, Inc.*, 555 F. Supp. 2d at 332. It is also consistent with the award in *Prana Hospitality*, a case with similar facts. In this case, Plaintiff Broadcast Music contacted the Establishment 160 times during the two-year and two-month period between March 2017 and filing its complaint in May 2019. These notifications included eight "cease and desist" letters. *See* Dkt. No. 19-3 at ¶ 5. Based on these facts, the Court finds that Defendants acted willfully in infringing Plaintiffs' copyrights and refusing to obtain a license from Plaintiff Broadcast Music. Furthermore, the Court finds that Plaintiffs' request for an award of $12,500 per infringement, totaling $87,500 in statutory damages, is reasonable and justified in this case.

### C. Permanent injunction

"Under the Copyright Act, a court may grant a permanent injunction 'on such terms as it may deem reasonable to prevent or restrain' further copyright infringement." *Wexford INR LLC*, 2014 U.S. Dist. LEXIS 128510, at *21-*22 (quoting 17 U.S.C. § 502(a)). "'Injunctive relief is warranted where a copyright owner establishes liability and a threat of continuing violations.'" *Id.* at *22 (quoting [*N. Lights, Inc.*, 555 F. Supp. 2d at 332] (citing *Warner Bros. Entm't, Inc. v. Carsagno*, 06-CV-2676, 2007 WL 1655666, at *4 [E.D.N.Y. June 4, 2007])). "A showing of continued infringement in the past and a likelihood of infringement in the future may warrant the issuing of a permanent injunction." *Id.* (citations omitted).

To obtain a permanent injunction in a copyright infringement case, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted).

Here, Plaintiffs have established the first two elements by showing that Defendants infringed upon Plaintiffs' musical compositions on numerous instances by publicly performing the works at the Establishment without a license. Defendants continued to do so even after they had notice that their conduct constituted copyright infringement. As the court in *Wexford INR LLC* noted, "[t]his supports the inference that, without a permanent injunction, Defendants will continue their illegal conduct." *Wexford INR LLC*, 2014 U.S. Dist. LEXIS 128510, at *23.

Moreover, Plaintiffs have established the third element because Defendants do not suffer hardship when required to comply with the law and obtain a valid license to Plaintiffs'

copyrighted musical compositions.  *See id.* at *24.  Plaintiffs, however, suffer hardship when deprived of their legal rights.  *See id.*  Finally, Plaintiffs have established the fourth element because it is in the public's interest to grant permanent injunctions to ensure future copyright holders are protected from infringers and to inform the public of the importance of copyrights in musical composition.  *See id.*  For each of these reasons, the Court grants Plaintiffs' request for a permanent injunction.

### D. Attorneys' fees and costs

In response to the Court's request, Plaintiffs submitted an affidavit with detailed information as to the experience of the attorneys who worked on this case, their hourly rates, and the number of hours expended on each task.  *See* Dkt. Nos. 20, Text Order, and 21, Sidoti Aff. Plaintiffs' counsel indicated that this litigation "was billed pursuant to a flat rate agreement between Gibbons P.C. and Plaintiff Broadcast Music[.]"  *See* Dkt. No. 21 at ¶ 2.  Plaintiffs' counsel asserts that the total attorneys' fees to date are $7,500.00.  *See id.*  According to Mr. Sidoti's affidavit, Gibbons P.C. personnel spent a total of 28.9 hours working on activities related to this action.  *See id.* at ¶ 3.  This included the time to prepare and file the complaint, attend to issues regarding the summons and complaint, obtain a certificate of default against Defendants, prepare the instant notice of motion and ancillary papers, review and prepare multiple declarations and exhibits in support of the pending motion, research and draft the Memorandum of Law in support of the pending motion, and confer in-firm and with Plaintiff Broadcast Music about strategic matters.  *See id.* at ¶ 3(a)-(g).

Mr. Mark S. Sidoti asserts that he is a Director in the Commercial & Criminal Litigation Department at Gibbons P.C. and that his current hourly rate is $650 per hour, which he claims is a reasonable rate given his experience and position.  *See id.* at ¶ 6(a).  He graduated from

Fordham University School of Law in 1988 and is admitted to practice in New Jersey, New York, and various federal courts. *See id.* He billed 3.1 hours working on this case. *See id.* at ¶ 4.

As of January 1, 2020, Mr. J. Brugh Lower is also a Director in the Commercial & Criminal Litigation Department and Intellectual Property Department at Gibbons P.C. *See id.* at ¶ 6(b). Mr. Lower graduated in 2008 from Seton Hall University School of Law and is admitted to practice in New Jersey, New York, and various federal courts. *See id.* As an Associate, Mr. Lower's hourly rate was $470 per hour, and his current hourly rate is $525 per hour, which he claims is a reasonable rate given his experience and position. *See id.* Mr. Lower billed 25.1 hours working on the instant case. *See id.* at ¶ 4.

Lastly, Mr. Martin Brech is a Managing Clerk at Gibbons P.C. *See id.* at ¶ 6(c). He has been a Managing Clerk since 2000; and, before that, he was a paralegal since 1986. *See id.* Mr. Brech's current hourly rate is $250 per hour, which he claims is a reasonable rate given his experience and position. *See id.* Mr. Brech billed 0.7 hours working on this case. *See id.* at ¶ 4.

In addition to attorneys' fees, Plaintiffs' counsel asserts that Plaintiffs have incurred $1,016.00 in costs in prosecuting this action against Defendants. *See id.* at ¶ 7. Accordingly, Plaintiffs request the Court grant them $7,500.00 in attorneys' fees and $1,016.00 in costs.

"The Copyright Act provides that the court may award reasonable attorney's fees to the prevailing party at its discretion." *N. Lights, Inc.*, 555 F. Supp. 2d at 333 (citing 17 U.S.C. § 505). "In determining whether to award a fee in copyright cases the Supreme Court has provided that the following facts are appropriately considered: 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"

*Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3rd Cir. 1986) (internal quotation marks removed))).

"As to the amount of attorney's fees to award, courts within the Second Circuit apply the 'presumptively reasonable fee analysis' in determining the appropriate remuneration." *Id.* (quoting *Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 (2d Cir. 2007)). "This analysis 'involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award.'" *Id.* (quoting [*Porzig*, 497 F.3d at 141).[2] Notably, "courts in this Circuit do not ordinarily award attorneys' fees on a flat-rate basis[.]" *Thomas v. City of New York*, No. 14 Civ. 7513, 2017 U.S. Dist. LEXIS 199235, *20 (E.D.N.Y. Dec. 1, 2017).

In a 2017 unopposed motion for default judgment in a similar case of copyright infringement, a court in this District held that 15.5 hours worked was reasonable. *See Broad.*

---

[2] Courts weigh the following factors to determine what is reasonable:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
>
> *N. Lights, Inc.*, 555 F. Supp. 2d at 333 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 492 F.3d 110, 114, n.3 (2d Cir. 2007) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974))).

*Music, Inc. v. Rider Rock's Holding, LLC*, No. 1:16-CV-1398 (GTS/ATB), 2017 U.S. Dist. LEXIS 109383, *7 (N.D.N.Y. July 14, 2017).  Here, Plaintiffs' counsel contends that they spent 28.9 hours working on the case.  *See* Dkt. No. 21 at ¶ 3.  Upon reviewing Plaintiffs' counsel's breakdown of the charges, the Court finds that 28.9 hours working on this action was reasonable.

Furthermore, the *Rider Rock's Holding, LLC* court held that the requested hourly rate of $450 was considerably higher than what is usually expected in the Northern District of New York.  *See Rider Rock's Holding, LLC*, 2017 U.S. Dist. LEXIS 109383, at *7; *see also Doe v. Cornell Univ.*, No. 3:17-CV-402 (GTS/DEP), 2019 U.S. Dist. LEXIS 62986 *18 (N.D.N.Y. Apr. 11, 2019) (holding that Plaintiff's requested rate of $550.00 per hour "is far above the rate deemed to be reasonable for partners in this district" and finding $350.00 per hour reasonable (citations omitted)).  For recent cases in this District, hourly rates have ranged from $250 to $325 for partners of a firm. *See Rider Rock's Holding, LLC*, 2017 U.S. Dist. LEXIS 109383, at *7 (holding $300 per hour to be a reasonable hourly rate for an experienced partner); *see also N. Lights, Inc.*, 555 F. Supp. 2d at 334 (holding that a rate of $325 an hour for an attorney with 19 years of experience in intellectual property law was reasonable); *Premium Sports, Inc. v. Nichols*, No. 3:17-CV-741 (GTS/DEP), 2018 U.S. Dist. LEXIS 124206, *24 (N.D.N.Y. July 25, 2018) (holding $300 per hour for a partner with over 20 years of federal civil practice experience and $200 an hour for an associate attorney with five years of civil practice experience reasonable).

As a result of Mr. Sidoti's 33 years in practice and his status as a "Director," presumably similar to a partner, the Court reduces his billable rate to $350 per hour.  Mr. Lower, with twelve years of practice, was an Associate prior to January 1, 2020, and the Court reduces his

rate for 23.7 hours of his work to $250 per hour. Following his promotion to "Director," Mr. Lower billed 1.4 hours on this case; and the Court reduces his rate to $300 per hour for that time.

Plaintiffs did not explain how a Managing Clerk differs from a paralegal, and the Court was unable to find any cases in this District discussing the rate of pay for a "Managing Clerk." Mr. Brech's tasks included electronically filing the Rule 7.1 Corporate Disclosure Statement and preparing the summons and affidavit of service. These tasks could have been performed by a paralegal or legal assistant. Courts in this District have routinely held that $80 to $90 per hour is an appropriate rate for paralegals. *See, e.g.*, *DFK Ent'mt LLC*, 2012 U.S. Dist. LEXIS 35089 at \*20; *Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2010); *Premium Sports, Inc.*, 2018 U.S. Dist. LEXIS 124206, at \*24 (reducing salary of paralegal/legal assistant with over 25 years of experience from $95 to $90 per hour). As such, the Court reduces Mr. Brech's rate from $250 per hour to $90 per hour.

After calculating each of these fees based upon the Court's reductions, Plaintiffs would be entitled to $7,493 in attorneys' fees. Plaintiffs requested flat-rate award of $7,500 is only $7.00 more than what would be "reasonable" within this District if attorneys' fees were calculated at a reasonable hourly rate. Thus, the Court finds that Plaintiffs' request for $7,500 in attorneys' fees is "reasonable" and grants that request. *See Broad. Music, Inc. v. PAMDH Enters.*, No. 13-CV-2255, 2014 U.S. Dist. LEXIS 84409, \*19-\*26 (S.D.N.Y. June 19, 2014) (finding Plaintiffs' counsel's $7,500 flat fee to be a "reasonable" fee and what the "paying client" has agreed to pay in the case).

Finally, Plaintiffs' counsel alleged that they incurred $1,016.00 in costs associated with filing the complaint, serving the summons and complaint on the corporate and individual

defendants, and on Westlaw research. "[T]he Second Circuit and district courts in this Circuit have noted that legal research is a part of attorneys' fees rather than an additional cost." *Hines v. City of Albany*, No. 1:06-CV-1517 (GTS/RFT), 2017 U.S. Dist. LEXIS 222260, *31 (N.D.N.Y. Nov. 30, 2017) (collecting cases). The Court finds that $986.00 of the requested amount is appropriate as "costs"; and $30.00 that Plaintiffs requested for Westlaw research should be included in their flat-rate of $7,500 for attorneys' fees. Therefore, the Court awards Plaintiffs $986.00 in costs.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for a default judgment, *see* Dkt. No. 19, is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' are entitled to recover from Defendants, jointly and severally, (1) an award of statutory damages in the amount of $12,500 per infringement, for each of the seven musical compositions that were infringed, for a total of $87,500; (2) attorneys' fees in the amount of $7,500; and (3) costs in the amount of $986.00; and the Court further

**ORDERS** that Defendants and their agents, servants, employees, and all persons acting under their permission or authority shall be permanently enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by Plaintiff Broadcast Music; and the Court further

**ORDERS** the Clerk of the Court shall enter judgment in favor of Plaintiffs and close this case.

**IT IS SO ORDERED.**

Dated: April 27, 2020
      Syracuse, New York